IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JANICE DARLENE WARNER,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | Civil Action No. 3:08-CV-1212-N (BH) |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment or, in the alternative, Judgment on the Pleading* ("Pl. Mot."), filed February 17, 2009 (docket #13), and *Commissioner's Motion for Summary Judgment* ("Def. Mot."), filed March 16, 2009 (docket #14). Plaintiff did not file a reply. Based on the filings, evidence and applicable law, *Plaintiff's Motion for Summary Judgment* should be **DENIED**, *Commissioner's Motion for Summary Judgment* should be **GRANTED**, and the final decision of the Commissioner should be **AFFIRMED**.

**I. BACKGROUND**[1]

**A.    Procedural History**

Janice Darlene Warner ("Plaintiff") seeks judicial review of a final decision by the

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI) under Title XVI of the Social Security Act. On August 4, 2006, Plaintiff filed an application for DIB and SSI. (Tr. at 76-78, 84-85). Plaintiff claimed she had been disabled since the date of her application due to bipolar disorder, rheumatoid arthritis, and pain in her hip, lower back, and right knee.[2] (Tr. at 146). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 23, 28). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 52). A hearing, at which Plaintiff personally appeared and testified, was held on January 14, 2008. (Tr. at 549-82). On February 29, 2008, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 8-18). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in her request for review did not provide a basis for changing the ALJ's decision. (Tr. at 2-4). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 2). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on July 17, 2008.

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born in 1952. (Tr. at 76). At the time of the hearing before the ALJ, she was 55 years old. (Tr. at 552). She completed the eleventh grade, received her G.E.D., and was enrolled as a full-time college freshman at the time of the administrative hearing. (Tr. at 152, 552-53). Her past relevant work experience included work as a supermarket cashier, counter clerk, housekeeper in a hospital, and dispatcher for a tow truck company. (Tr. at 147, 556-58). Plaintiff last worked

---

[2] In her DIB and SSI application, Plaintiff alleged an onset date of February 1, 2002. (Tr. at 76). She amended this date at the administrative hearing to August 4, 2006. (Tr. at 555).

in 2006. *Id*.

## 2. Medical Evidence

Although Plaintiff presents a great deal of medical evidence concerning her alleged physical and mental impairments, only the medical records concerning her mental impairments are relevant to this appeal and will be considered.

On June 10, 2004, Plaintiff visited Lakes Regional MHMR Center ("Lakes") in Greenville, Texas, with complaints of mood liability characterized by mood elevation, expansiveness, grandiosity, poor management and poor impulse control lasting several days, followed by periods of depression. (Tr. 326-30). Nurse Haynes, R.N., C.N.S., conducted a psychiatric evaluation and diagnosed Plaintiff with bipolar disorder and polysubstance abuse in remission. *Id*. Her next visit to Lakes occurred almost eight months later, on February 14, 2005, when she presented herself for medication management. (Tr. at 337). At this visit, Nurse Haynes noted that Plaintiff lost her job and that Plaintiff self-rated her depression at 8 on a scale of 10, with 10 being severe. *Id*. Nurse Haynes adjusted Plaintiff's medication and requested that she return in four weeks. (Tr. at 338). At a follow-up visit one month later, Nurse Gregg, R.N., wrote that Plaintiff was "doing well" on her medications but that she often forgot to take the prescribed doses. (Tr. at 340-41). Plaintiff remarked that her depression was less severe and rated it at 5 on a scale of 10. (Tr. at 341). Over the next nine months, Plaintiff visited Lakes three times. (Tr. at 342, 335, 333). During this period she reported that she was doing well, that her depression had improved, and that she had no, or minor, side effects from the medication.

On January 12, 2006, a caseworker at Lakes assessed Plaintiff's bipolar disorder on a symptom scale. The scale ranted from 1, "not present," to 7, "extremely severe." (Tr. at 351). She

noted that Plaintiff had "moderate to severe" anxiety (5 on the scale), but that all other symptoms, if present, were very mild, mild, or moderate (1 to 4 on the scale). *Id.* The next day, Nurse Haynes noted that Plaintiff was compliant with her medication and that her depression had improved to the extent that Plaintiff rated it at 2 on a scale of 10. (Tr. at 331). Nurse Haynes wrote that Plaintiff had minimal mood liability and was back in school. *Id.* Over the next ten months, Plaintiff visited Lakes five times. (Tr. at 186-92, 324, 348-350). Plaintiff's bipolar disorder symptom scale was largely the same as before, with symptoms ranging from not present to moderately severe. (Tr. at 348-50). At a clinical exam on April 17, 2006, Nurse Haynes noted that Plaintiff had moderate side effects from her medication. (Tr. at 324). Plaintiff's Global Assessment of Functioning ("GAF") score during her treatment at Lakes in 2006 was 40.[3] (*See e.g.*, Tr. at 304, 307, 311).

On February 5, 2007, Dr. Linda Ludden, Ed.D, a licensed psychologist, performed a consultative mental examination. (Tr. at 233-36). Dr. Ludden noted that Plaintiff appeared normal, was dressed appropriately, and cooperated throughout the examination. (Tr. at 233). She observed that Plaintiff's thought process was logical and goal oriented and noted that Plaintiff reported excessive anxiousness and occasional auditory hallucinations. (Tr. at 235). Dr. Ludden observed that Plaintiff was oriented to person, place, time, and situation and that her memory, concentration, and judgment were satisfactory. (Tr. at 235-36). Based on Plaintiff's account of her past history, Dr. Ludden diagnosed Plaintiff with bipolar disorder, depressed, severe with psychotic features, post-traumatic stress disorder, and alcohol abuse. (Tr. at 236). She assigned Plaintiff a GAF score

---

[3] A GAF score falling between 31 and 40 indicates some impairment in reality testing or communication OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. A GAF score falling between 41 and 50 indicates serious symptoms OR any serious impairment in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 32 (4th ed. text revision 2000). *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 32 (4th ed. text revision 2000).

of 49 and noted that Plaintiff would be able to manage benefits on her own. *Id*.

Plaintiff returned to Lakes on March 1, 2007. (Tr. at 179-85). Symptoms of her bipolar disorder ranged from not present to moderately severe, and her GAF score was 40. (Tr. at 181, 183). Plaintiff visited Lakes three more times in 2007, and her GAF remained at 40, but bipolar symptoms improved, ranging from not present to moderate (4 out of 7 on the scale). (Tr. at 156, 158, 166-67, 169, 178). Her depression and anxiety were rated at a 3 on a scale of 10, and her side effects were rated at a 4. (Tr. at 162, 175).

### 3. Hearing Testimony

A hearing was held before the ALJ on January 14, 2008. (Tr. at 549-82). Plaintiff appeared personally and was represented by an attorney. (Tr. at 549).

#### *a.  Plaintiff's Testimony*

Plaintiff testified that she was 55 years old, attained her G.E.D., and was enrolled full-time as a college freshman. (Tr. at 552-53). She last worked in 2006 as a housekeeper in a hospital but was fired for being late to work. (Tr. at 554). She also was fired from several of her previous jobs because she was unable to function due to her depression. (Tr. at 559-60).

Plaintiff testified that her bipolar mood swings caused her to believe she could perform a job she was incapable of doing and to be taken advantage of by other people. (Tr. at 561).

Plaintiff testified that her daily activities included cleaning her apartment, cooking, going to school, and doing schoolwork. (Tr. at 562, 564-65). She stated that she could not return to work because she frequently forgot things and had difficulty standing for long periods. (Tr. at 566). When she was depressed, she stayed in her apartment, slept and cried. (Tr. at 570). She said that her medications had been somewhat successful. *Id*.

### b.     *Medical Expert Testimony*

Two medical experts ("ME") testified at the hearing. Dr. Charles Murphy, M.D., testified that Plaintiff's primary physical diagnosis was chronic pain syndrome. (Tr. at 573). He also testified that Plaintiff had multiple joint complaints but no specific diagnosis. *Id*.

Dr. Alvin Smith, a clinical psychologist, testified that Plaintiff has been diagnosed with bipolar disorder and that she responded well to treatment. (Tr. at 574-75). He noted that Plaintiff's symptoms ranged from moderate to less than moderate and that she could function at a consistent level. (Tr. at 575). He testified that Plaintiff would have difficulty with complex tasks but had no other functional limitations. *Id*.

### c.     *Vocational Expert Testimony*

Evelyn Hartman testified as a vocational expert ("VE"). The VE classified Plaintiff's past work as a cashier/checker (light, specific vocational preparation ("SVP") of 3), hospital cleaner (light, SVP 2), motor vehicle dispatcher (sedentary, skilled, SVP 5), and counter clerk (light, SVP 3). (Tr. at 579-80).

The ALJ proposed a hypothetical person with Plaintiff's educational background who could perform medium level work but not complex tasks. (Tr. at 580). The VE testified that such a person could perform Plaintiff's past relevant work as a cashier/checker, hospital cleaner, and counter clerk. (Tr. at 580-81).

## C.     **ALJ's Findings**

The ALJ denied Plaintiff's application for benefits by written opinion issued on February 29, 2008. (Tr. at 8-18). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2002. (Tr. at 13, ¶1). As such, she was not entitled to

DIB under Title II. The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 21, 2007. (Tr. at 14, ¶2). In addition, he found that Plaintiff had the severe impairments of bipolar disorder, chronic pain syndrome, and a history of alcohol abuse. (*Id.*, ¶3). The ALJ determined, however, that none of these severe impairments met or equaled a listed impairment. (*Id.*, ¶4).

The ALJ found that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally; sit for 6 hours in an 8 hour day; stand or walk for 6 hours in an 8 hour day; and could not perform jobs that required understanding or carrying out complex instructions. (*Id.*, ¶5). In making this RFC determination, the ALJ accorded little weight to the GAF score assigned by Lakes because it did not take into account the level of symptomatology displayed by Plaintiff at her visits. (Tr. at 17). The ALJ also discounted the weight accorded to Dr. Ludden's GAF score because it was based upon Plaintiff's subjective complaints. *Id.* Based on Plaintiff's RFC, the ALJ determined that Plaintiff could perform her past relevant work as a cashier/checker, a hospital cleaner, or as a counter clerk. (Tr. at 18, ¶6). Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 21, 2007 through the date of his decision. (*Id.*, ¶7).

## II. ANALYSIS

**A.    Legal Standards**

   **1.    Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a

scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*.

### 2.     **Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v.*

*Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.     Issue for Review**

Plaintiff presents a single issue for review.  She contends that "[t]he Administrative Law Judge erred in assigning controlling weight to an opinion of a non-treating, non-examining medical witness regarding Plaintiff's functional limitations."  (Pl. Mot. at 1).

**C.     Issue One: Medical Opinion Evidence**

Plaintiff's one paragraph argument is that the ALJ did not adopt the GAF scores from Lakes and Dr. Ludden but instead adopted the ME's testimony about the severity of Plaintiff's impairments. (Pl. Mot. at 8-9).  Since different standards apply to the weight accorded to the opinions by Lakes and Dr. Ludden, the Court considers them separately.

   **1.     Lakes Regional MHMR**

Plaintiff saw medical staff at Lakes over the course of at least a three and a half year period for treatment of her bipolar disorder.  Lakes is therefore a treating source as defined in the Social Security regulations.  *See* 20 C.F.R. § 404.1502 (treating source is a medical source that has an ongoing treatment relationship with claimant).

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with…other substantial evidence.'"  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).  "Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, 'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez*, 64 F.3d at 176 (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Martinez*,

64 F.3d at 176 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). If good cause exists, an ALJ may give a treating physician's opinion little or no weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id*. at 456.

In this case, Plaintiff contends the ALJ erred because he did not accord controlling weight to the GAF score of 40 assigned by Lakes. A GAF score of 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 32 (4th ed. text revision 2000). In his written decision, the ALJ explicitly addressed the GAF score from Lakes and found that the score did not consider the level of symptomatology displayed by Plaintiff at her visits. (Tr. at 17). He also noted that Plaintiff's bipolar symptom assessments at Lakes were mild to moderate, which were inconsistent with a GAF score indicating a major impairment in several areas. *Id*. The medical records from Lakes support this finding. (Tr. at 156, 167, 181, 348-51) (symptoms range from not present to moderately severe). Specific notations within the Lakes records, such as Plaintiff returning to school (Tr. at 331), also support the finding that Plaintiff lacked major impairments.

At the administrative hearing, Plaintiff testified that she was enrolled full-time as a college freshman. (Tr. at 552-53). College attendance during the period of alleged disability is evidence of an ability to tolerate a sustained daily work routine. *Sorenson v. Weinberger*, 514 F.2d 1112, 1118 (9th Cir. 1975). Plaintiff also testified that her prescribed medications had been "somewhat"

successful, and notes from Lakes confirm this. (Tr. at 175, 324, 570). A condition that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988). Plaintiff also testified that she cleaned her apartment, cooked, and watched television on a daily basis. (Tr. at 562, 564-65). The ALJ properly considered these activities when he determined Plaintiff's disability status. *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992); *Griego v. Sullivan*, 940 F.2d 942, 944-45 (5th Cir. 1991). Plaintiff's activities do not comport with someone who suffers from major impairments in several areas as a GAF score of 40 would suggest.

Also at the administrative hearing, the ME testified that Plaintiff's symptoms ranged from moderate to less than moderate, that she could function at a consistent level, and that she would have difficulty with complex tasks but had no other functional limitations. (Tr. at 575). Program physicians, such as MEs, are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2 (S.S.A. July 2, 1996). The ALJ must consider, but is not bound by, the opinions of these nonexamining medical sources. *Id.*; 20 C.F.R. § 404.1527(d). The ALJ noted that the ME's assessment of Plaintiff's functional limitations was consistent with the medical records from Lakes. Since other evidence in the records supported the ME's testimony, the ALJ properly considered it and incorporated it into his findings. SR 96-6p, 1996 WL 374180, at *2.

Although personnel at Lakes consistently assigned Plaintiff a GAF of 40, there is nothing in the records themselves to support this finding. Since the GAF scores are not well-supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with other substantial evidence in the record, the ALJ was not required to give controlling weight to the GAF

score.[4] *Martinez*, 64 F.3d at 176; SSR 92-6p, 1996 WL 374188, at *2 (S.S.A. July 2, 1996) (error to give a treating source opinion controlling weight if it is not well-supported). Accordingly, the Court finds that substantial evidence supports the ALJ's decision not to grant controlling weight to the GAF score assigned by Lakes. *Leggett*, 67 F.3d at 564.

### 2. Consultative Psychologist

Plaintiff saw Dr. Ludden once for a consultative examination for her bipolar disorder. (Tr. at 233-36). Dr. Ludden is a nontreating source as defined in the Social Security regulations. *See* 20 C.F.R. § 404.1502 (nontreating source is a medical source that does not have an ongoing treatment relationship with claimant, such as a consultative examiner). Since Dr. Ludden is not a treating physician, her opinion is not entitled to controlling weight. 20 C.F.R. § 404.1527(d).

As with the GAF score from Lakes, the ALJ expressly discounted Dr. Ludden's GAF score of 49. The ALJ noted that Dr. Ludden based her assessment on Plaintiff's subjective complaints. (Tr. at 17). A medical source's recording of symptoms by history, rather than direct observation, is not entitled to great weight. *Greenspan*, 38 F.3d at 237-38. Additionally, Dr. Ludden's own observations did not justify rating Plaintiff as someone with serious impairments. (Tr. at 17; *see Diagnostic and Statistical Manual of Mental Disorders* (GAF score falling between 41 and 50 indicates serious symptoms OR any serious impairment in social, occupational, or school functioning)). Indeed, Dr. Ludden found that Plaintiff's thought process was logical and goal oriented and that she was oriented to person, place, time, and situation. (Tr. at 235-36). Dr. Ludden also wrote that Plaintiff's memory, concentration, and judgment were satisfactory, although she

---

[4] In addition to the GAF score being internally inconsistent with the Lakes records, federal courts have declined to find a strong correlation between an individual's GAF score and the ability or inability to work. *Davis v. Astrue*, 2008 WL 517238, at *3 n.7 (N.D. Tex. Feb. 27, 2008) (citing *Heinritz v. Barnhart*, 2006 WL 2294850, at *3 (10th Cir. Aug.10, 2006); *Quaite v. Barnhart*, 312 F.Supp.2d 1195, 1200 (E.D. Mo.2004)).

experienced anxiousness and occasional auditory hallucinations. (Tr. at 235-36). She also found that Plaintiff had no need for supervision in her daily activities, that she could manage her own finances, and that she performed household chores on her own, such as cleaning and shopping for groceries. (Tr. at 234).

Based on these findings, Dr. Ludden's assigned GAF score of 49 is inconsistent with her own examination because it describes someone who only has mild to moderate functional impairments. Other evidence in the medical record, such as medical records from Lakes, Plaintiff's testimony, and the ME's assessment, also contradicts a GAF score of 49. (*See* Part II.C.1, *supra*). Accordingly, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Ludden's GAF score.[5] *See Martinez*, 64 F.3d at 176.

### III. RECOMMENDATION

*Plaintiff's Motion for Summary Judgment or, in the alternative, Judgment on the Pleading* should be **DENIED** (docket #13), *Commissioner's Motion for Summary Judgment* should be **GRANTED** (docket #14), and the final decision of the Commissioner should be **AFFIRMED**.

**SO RECOMMENDED**, on this 26th day of April, 2009.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[5] On the final page of Plaintiff's brief, she requests the Court to set aside the ALJ's denial of her claims for a period of disability. (Pl. Mot. at 9). To the extent that this is a separate issue for review, the Court deems it abandoned because it was neither presented as an issue for review as required by this Court's scheduling order nor was it briefed. (*See* docket #12, at 2) (issues must be properly raised or they may be deemed abandoned). Additionally, the Court notes that Plaintiff withdrew her DIB application at the administrative hearing. (Tr. at 555-56).

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

                                                            */s/ Irma Carrillo Ramirez*
                                                            IRMA CARRILLO RAMIREZ
                                                            UNITED STATES MAGISTRATE JUDGE